**Susan S. FEJES, Plaintiff,**

**v.**

**GILPIN VENTURES, INC., a Colorado corporation, d/b/a The Gilpin Hotel Casino, Defendant.**

**Civil Action No. 95–B–1765.**

United States District Court, D. Colorado.

April 25, 1997.

Ronald E. Gregson, Bradley M. Knepper, Hugh Pixler, Gregson & Pixler, P.C., Denver, for Plaintiff.

Michael H. Bynum, Rebecca L. Fischer, Neal Cohen, Chrisman, Bynum & Johnson, P.C., Boulder, for Defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendant, Gilpin Ventures, Inc., a Colorado corporation, d/b/a The Gilpin Hotel Casino (Gilpin Casino) moves for dismissal of plaintiff Susan S. Fejes' (Fejes) complaint. Fejes alleges gender and pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, violation of the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 *et seq.*, and willful breach of contract. Gilpin Casino also moves for summary judgment on all claims. I will convert the motion to dismiss into a motion for summary judgment. The summary judgment motions are adequately briefed and oral argument will not materially aid their resolution. I conclude that summary judgment should be granted on the entirety of plaintiff's Title VII claim. I will deny the motion for summary judgment on plaintiff's claims for violation of the FMLA and willful breach of contract.

## I.

Fed.R.Civ.P. 12(b) provides that if matters outside the complaint are presented to and not excluded by the court, it should treat the motion to dismiss as a summary judgment motion. Fed.R.Civ.P. 12(b); *Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972); *Foremaster v. City of St. George*, 882 F.2d 1485, 1491 (10th Cir.1989).

## II.

The very purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995). Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in her complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir.1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Conclusory statements are insufficient to defeat a motion for summary judgment. *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1418 (10th Cir.1993).

## III.

Unless otherwise indicated, the following facts are undisputed. On April 6, 1993, Gilpin Casino hired Fejes as a full-time blackjack dealer. During her employment with Gilpin Casino, Fejes' work performance was satisfactory. On March 16, 1994, Fejes took an unpaid medical leave, pursuant to the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601–2654, based on her physician's orders because of complications with her pregnancy. Her child was born on April 22, 1994. Fejes alleges that on May 27, 1994, she arranged with her supervisor, Rick Curran (Curran), to return to work two nights per week as soon as she was able to do so. 2nd Amended C/O ¶ 14.

Fejes' medical leave was scheduled to end on June 8, 1994. *Id.* Around June 15, 1994, Curran asked Fejes to work the weekend of June 17–18, 1994. Fejes alleges she was unable to return to work at that time because she had been unable to establish an appropriate breast-feeding schedule. *Id.* at ¶ 15. Fejes also alleges that on June 20, 1994, she informed Curran that she was able to work two nights per week. *Id.*

Shortly after that, Curran was made day supervisor and Fejes was referred to Gilpin Casino games manager Jerimy Fox (Fox). According to Fejes, Fox claimed to know nothing of Fejes' discussions with Curran. *Id.* at ¶ 17. The parties stipulate that on July 8, 1994, Barbara Bennett, an administrative assistant in Gilpin Casino's human resources department, wrote Fejes a letter informing her that she was considered "self-terminated" and that her position had been filled. PTO p. 5, ¶ 4. According to Fejes, Gilpin Casino fired her in its July 8, 1994 letter for not returning to work on June 8, 1994 and for not contacting Gilpin Casino to inform it of her intention to return to work. *Id.* at ¶ 17. Defendant acknowledges that it mistakenly sent Fejes a termination letter on July 8, 1994 because the human resources department was unaware of the arrangements Fejes had made with Curran. MSJ Brief p. 4.

After Fejes "protested that she had indeed kept in contact with defendant," *id.* at ¶ 18, on July 11, 1994, Gilpin Casino offered to

return her to full-time and she agreed. However, according to Fejes, when she realized that "her gaming license was about to expire and had not been renewed, Fox told her that a part-time employee would take her shift until renewal of the license, which was anticipated to occur within three weeks." *Id.* at ¶ 20. On July 14, 1994, Fox wrote Fejes a letter informing her that she should "consider [her] employment with the Gilpin as terminated." PTO p. 5, ¶ 5. Gilpin Casino states that the letter "informed [Fejes] that due to the fact that she allowed her license to expire, the Gilpin would be unable to guarantee a position for her during her renewal period and [Fejes was] therefore deemed terminated." MSJ Brief p. 6.

Fejes filed gender and pregnancy discrimination charges with the Equal Employment Opportunity Commission (EEOC) on September 1, 1994. On July 14,1995, Fejes received a Notice of Right to Sue from the EEOC and filed this action.

## IV.

### *Title VII discrimination, 42 U.S.C. § 2000e, et seq.*

Fejes claims she was "discriminated against on the basis of her gender in terms, conditions and privileges of employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*" 2nd Amended C/O ¶ 30. Although the complaint is no more specific than this, defendant assumes that this claim includes a Title VII pregnancy discrimination claim and the parties have addressed it in their papers. Hence, I will consider all of Gilpin Casino's arguments that it is entitled to summary judgment on both the gender and pregnancy prongs of the Title VII claim.

Gilpin Casino moves for summary judgment on the Title VII claim for a number of reasons. I will address Gilpin Casino's arguments concerning pregnancy discrimination first.

A. *Refusal to provide an employee with a part-time schedule for breast-feeding or childrearing is not conduct protected by Title VII*

■ The Pregnancy Discrimination Act of 1978(PDA), codified at 42 U.S.C. § 2000e(k), is a definitional amendment to Title VII which Congress enacted to include pregnancy-based discrimination in Title VII's prohibition of gender-based employment discrimination. Section 2000e(k) provides:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work. . . .

The Tenth Circuit has not addressed the issue whether breast-feeding or childrearing are medical conditions "related to pregnancy or childbirth," within the meaning of the PDA. Based on the language of the PDA, its legislative history, and decisions from other courts interpreting the Act, I hold that breast-feeding or childrearing are not conditions within the scope of the PDA.

Several courts addressing similar situations have uniformly held that needs or conditions of the child which require the mother's presence are not within the scope of the PDA. For example, in *Wallace v. Pyro Mining Co.*, 789 F.Supp. 867 (W.D.Ky.1990), *aff'd without opinion,* 951 F.2d 351 (6th Cir.1991), plaintiff sought an additional six-week leave of absence after her maternity leave ended to deal with her inability to wean her child from breast-feeding. The district court granted defendant's motion for summary judgment, stating:

> Nothing in plaintiff's case states a claim under Title VII as amended by the Pregnancy Discrimination Act. . . . While it may be that breast-feeding and weaning are natural concomitants of pregnancy and childbirth, they are not "medical conditions" related thereto. Admittedly, the act does not define what constitutes "related medical conditions." However, the substantive references to "related medical conditions" within that legislative history are all in the context of the extent to which

female employees can be denied medical benefits, such as sick leave and health insurance coverage, arising from pregnancy and childbirth. Further, Congress' express intent was to codify ... EEOC guidelines that required "employers to treat disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth and recovery therefrom as all other temporary disabilities." H.R. No. 948, 95th Cong. 2, reprinted in 1978 U.S.Code Cong. & Admin.News, 4749, 4750.

In appending the PDA amendment to Title VII, Congress considered the statement that "if a woman wants to stay home to take care of the child, no benefit must be paid because this is not a medically determined condition related to pregnancy." H.R. No. 948, 95th Cong. 5, reprinted in 1978 U.S.Code Cong. & Admin.News, 4749, 4753. Nothing in the PDA, or Title VII itself, obliges an employer to accommodate the child-care concerns of breast-feeding workers. If Congress had wanted these sorts of child-care concerns to be covered in Title VII by the Pregnancy Discrimination Act, it would have said so in plain language. *Wallace,* 789 F.Supp. at 869–70.

Similarly, in *Barrash v. Bowen,* 846 F.2d 927 (4th Cir.1988), the court reversed a judgment for plaintiff based, in part, on her employer's denial of six months maternity leave to permit her to breast-feed her newborn child. The court held that denial of discretionary leave for breast-feeding did not provide a basis for a disparate impact claim nor did it give rise to a claim under the PDA.

In *Barnes v. Hewlett–Packard Co.,* 846 F.Supp. 442 (D.Md.1994), plaintiff sought to extend her maternity leave to provide unspecified medical care for newborn twins. She was denied this leave and claimed a violation of the PDA. Again, the employer's motion for summary judgment was granted. The trial court stated, "[h]owever logical it may be to argue, as Barnes does, that parental leave following maternity leave is gender-based and thus protected under Title VII, that proposition has been consistently rejected from the outset." 846 F.Supp. at 443. *See also Fleming v. Ayers & Assoc.,* 948 F.2d 993, 996–97 (6th Cir.1991) (PDA "does not

encompass adverse employment actions based upon the medical condition of a child simply because the child's condition is present at birth."); *Pearlstein v. Staten Island University Hosp.,* 886 F.Supp. 260, 266 n. 5 (E.D.N.Y.1995). *See generally Fisher v. Vassar College,* 70 F.3d 1420, 1448 (2d Cir. 1995).

I conclude that the PDA only provides protection based on the condition of the mother—not the condition of the child. Also, I conclude that breast-feeding and child rearing concerns after pregnancy are not medical conditions related to pregnancy or childbirth within the meaning of the PDA. Accordingly, Fejes' Title VII claim is not viable.

**B.** *As a matter of law, Fejes is unable to establish a prima facie case of pregnancy discrimination*

■ To establish a *prima facie* case of pregnancy discrimination, Fejes must show that she: 1) belonged to the protected group; 2) was qualified and satisfactorily performing her job; 3) was adversely affected by the decision to terminate her; and 4) was treated less favorably than another nonpregnant employee under similar conditions. *See Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1417 (10th Cir.1993); *See Cole v. Ruidoso Municipal Schools,* 43 F.3d 1373, 1379 (10th Cir.1994). The burden of establishing a *prima facie* case is not onerous. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981).

1. *Fejes is not a member of the protected class because she was not pregnant when the alleged adverse employment actions were taken against her*

Gilpin Casino contends that Fejes has not established a *prima facie* case of pregnancy discrimination because when she was terminated Fejes was no longer pregnant. I disagree.

■ Title 42 U.S.C. § 2000e–2(a), as amended by the PDA, § 2000e(k), prohibits discrimination "on the basis of pregnancy, childbirth, or related medical conditions." The statute does not specify whether the

discrimination must occur during the pregnancy. However, to read Title VII so narrowly would lead to absurd results such as "prohibit[ing] an employer from firing a woman during her pregnancy but permit[ing] the employer to terminate her the day after delivery if the reason for termination was that the woman became pregnant in the first place." *Donaldson v. American Banco Corp.,* 945 F.Supp. 1456, 1463–64 (D.Colo. 1996). The plain language of the statute does not require plaintiff to be pregnant when the alleged discrimination occurs. Thus, I conclude that a plaintiff may bring a Title VII claim under the PDA even if she is not pregnant at the time of the alleged wrongdoing. However, a Title VII PDA plaintiff must nevertheless show she was pregnant at or near the time of the alleged discrimination. *See Brinkman v. Kansas Dept. of Corrections,* 863 F.Supp. 1479, 1486 (D.Kan.1994)(no *prima facie* showing when termination occurred almost a year after birth of child).

■ In this case, on March 16, 1994, Fejes took a medical leave because of complications with her pregnancy. Her child was born on April 22, 1994. Fejes' medical leave was scheduled to end on June 8, 1994 and she was terminated on July 14, 1994. Where, as here, the termination occurred less than three months after the pregnancy ended and five weeks after her medical leave ended, for summary judgment analysis, I conclude that Fejes was a member of the protected class. Accordingly, Gilpin Casino's motion for summary judgment on this basis cannot be granted.

2. *Fejes proffers no evidence that other similarly situated employees (employees who have taken leaves of absence) were treated differently then she*

■ Gilpin Casino contends that Fejes has not established the fourth prong of the *prima facie* case for pregnancy discrimination because she fails to proffer any evidence that other similarly situated employees (employees who have taken medical leaves) were treated differently then she. *See EEOC v. Ackerman, Hood, & McQueen, Inc.,* 956 F.2d 944, 947 (10th Cir.1992). I agree.

A review of the evidence Fejes submitted in opposition to the summary judgment motion fails to show any evidence of different treatment of males who took medical leaves. Hence, Fejes has not met her burden of showing issues of material fact to be determined on the fourth prong of her *prima facie* case. *See Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. Her conclusory statements are insufficient to defeat the motion for summary judgment. *Martin,* 3 F.3d at 1418.

C. *Fejes is unable, as a matter of law, to meet her burden to show that she was qualified and satisfactorily performing her job*

■ Turning to Fejes' Title VII claim of gender discrimination, Gilpin Casino argues that because there is no genuine dispute that Fejes' gaming license expired, Fejes is unable, as a matter of law, to establish the *prima facie* element that she was "qualified and satisfactorily performing her job." I disagree.

To establish a *prima facie* case of gender discrimination, Fejes must show that she: 1) belonged to the protected group; 2) was qualified and satisfactorily performing her job; 3) was adversely affected by the decision to terminate her; and 4) was treated less favorably than similarly situated male employees. *Martin,* 3 F.3d at 1417; *See Cole v. Ruidoso Municipal Schools,* 43 F.3d 1373, 1379 (10th Cir.1994).

It is undisputed that Fejes' gaming license had expired when she was terminated on July 14, 1994. It is also undisputed that pursuant to § 12–47.1–501(1)(d), C.R.S., blackjack dealers may not work in Colorado without a gaming license. However, the Tenth Circuit has held that:

a plaintiff may make out a *prima facie* case of discrimination in a discharge case by credible evidence that she continued to possess the objective qualifications she held when she was hired ... *or* by her own testimony that her work was satisfactory, ... *or* by evidence that she had held her position for a significant period of time.

*MacDonald v. Eastern Wyoming Mental Health Center,* 941 F.2d 1115, 1121 (10th

Cir.1991) (citations omitted)(emphasis added). Allowing alternative methods of meeting the second prong of a *prima facie* case is particularly appropriate in this case because Fejes argues that Gilpin Casino discriminated against her by terminating her because her gaming license had expired while it allowed other employees who had expired licenses to work positions not requiring a license until they could obtain a current license. Also, it is undisputed that Fejes worked for Gilpin Casino for eleven months during which she satisfactorily performed her job duties. Thus, I conclude that Fejes has met her *prima facie* burden to show that she was qualified or doing satisfactory work. *See MacDonald,* 941 F.2d at 1121.

> D. *Fejes' prima facie case of gender discrimination fails as a matter of law, because she alleged "[d]efendant provided male employees and female employees who have not taken pregnancy leaves with better working conditions than those provided plaintiff by defendant."* 2nd Amended C/O ¶ 26.

Fejes alleges that "[d]efendant provided male employees and females employees who have not taken pregnancy leaves with better working conditions than those provided plaintiff by defendant." 2nd Amended C/O ¶. Fejes fails to allege, however, that the males who were provided better working conditions were similarly situated to her; that is, males who took medical leaves. Furthermore, Fejes submits no evidence of better working conditions provided to males who took medical leaves. Accordingly, Fejes has not met her burden of showing that there are issues of material fact to be determined on this issue. *See Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

Having failed to meet her Title VII *prima facie* burden, Gilpin Casino is entitled to summary judgment on Fejes' Title VII claim in its entirety.

## V.

### *Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.*

Fejes claims that Gilpin Casino's actions in terminating her violated the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 *et seq.* Gilpin Casino states it is entitled to summary judgment on the FMLA claim because it restored Fejes "to her former position as a full-time black jack dealer five days a week." MSJ Brief p. 10.

■ An employer's obligation under the FMLA is to return the employee to the same or a substantially similar position. The Department of Labor, in the final rule-making phase of enacting regulations under the FMLA, stated:

> [o]n return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment....

29 C.F.R. § 825.214(a).

■ Fejes argues that summary judgment should be denied because instead of being restored to her position, she was terminated in violation of the FMLA, because her gaming support license had expired. The FMLA regulations provide:

> [i]f an employee is no longer qualified for the position because of the employee's inability to ... renew a license ..., as a result of the leave, the employee shall be given a reasonable opportunity to fulfill those conditions upon return to work.

29 C.F.R. § 825.215(b). Whether Fejes was unable to renew her gaming license as a result of her medical leave is genuinely disputed. *See e.g.* Resp.Brief pp. 13–15; Exh. 3, ¶¶ 4, 5; Exh. 4 at 21–23, 26, 28, 38; Reply Brief pp. 5–77; Exh. C, pp. 40,42,59; Exh. E ¶ 4. Also at issue is whether Fejes was provided a reasonable opportunity to renew her license. Because Fejes has responded with specific facts showing the existence of genuine issues of material fact on her FMLA claim, I will deny summary judgment. *Otteson,* 622 F.2d at 519; Fed.R.Civ.R 56(e).

## VI.

### *Pendent State Claim for Willful Breach of Contract*

Gilpin Casino moves for summary judgment on Fejes' willful breach of contract

claim. In essence, Fejes' claim is an implied contract claim based on Gilpin Casino's Company Handbook (the Handbook) and various policies contained within it.

### A. *Disclaimers*

Gilpin Casino argues that it is entitled to summary judgment on the breach of contract claim because it clearly and conspicuously disclaimed an intent to form any employment contract. I disagree.

■ Summary judgment denying a contract and promissory estoppel claim based on a handbook is appropriate "if the employer has clearly and conspicuously disclaimed intent to enter a contract limiting the right to discharge employees." *Ferrera v. A.C. Nielsen*, 799 P.2d 458, 461 (Colo.App.1990). The purpose of the "clear and conspicuous" requirement is to insure that the employee reads the provision and has notice that the company does not intend to form an employment contract. *See id.* Whether a contract disclaimer in a handbook is clear and conspicuous is a question of law. *Durtsche v. American Colloid Co.*, 958 F.2d 1007 (10th Cir.1992).

■ Gilpin Casino points to three different disclaimers Fejes received. Fejes' employment application states:

> I authorize investigation on all statements contained in this application. I understand that misrepresentation of information requested is cause for dismissal. Further, I understand and agree that my employment is for no definite period and may regardless of the date of payment of my wages and salary, be terminated at any time without *case* and without any previous notice.

Exh. 12.(emphasis added).

Fejes argues that this disclaimer is unclear. According to Fejes, the statement that her employment could be terminated "without case" has no meaning whatsoever. I agree and conclude, as a matter of law, that this disclaimer is unclear. Moreover, this disclaimer is not conspicuous.

Here, the above disclaimer is contained in a paragraph titled "AUTHORIZATION." The purported disclaimer is set forth in a single sentence located in a paragraph with unrelated sentences under an uninformative heading. Under these circumstances, I conclude as a matter of law that the disclaimer is not conspicuous. *See Ferrera*, 799 P.2d at 461.

■ Next, Gilpin Casino relies on a disclaimer contained in its Handbook, Exh. C, p. GO27, which states:

> This handbook and any subsequent revision or supplement is not, and should not be construed as, a contract for employment. You have the right to terminate your employment relationship at any time for any reason, with or without cause, and The Gilpin Hotel Casino reserves the right to do the same. No one, employed by The Gilpin Hotel Casino is authorized to make an exception to this understanding, except the General Manager of The Gilpin Hotel Casino whose approval must be in writing.

Fejes argues that this is not conspicuous. Once again, I agree.

The disclaimer paragraph is contained on a page titled as follows:

GILPIN HOTEL CASINO

    Company Handbook

### INTRODUCTION

*Id.* (emphasis in original). The disclaimer is buried in the sixth of eight paragraphs on the page and is not highlighted, capitalized or labeled in any manner. It is on a page with unrelated paragraphs all of which are under an uninformative heading. Under these circumstances, I conclude as a matter of law that the disclaimer is not conspicuous. *See id.*

■ Gilpin Casino also relies on a disclaimer contained in the "Acknowledge (sic) of Receipt of The Gilpin Hotel Casino Employee Handbook," Exh. 14, which states:

> I also understand that this Handbook is not and was not intended to serve as a contract between The Gilpin Hotel Casino and myself regarding the nature of continued employment or the duration of my employment with The Gilpin Hotel Casino,

that notwithstanding its providing certain standards of conduct, *the employment relationship with or without cause at any time,* and that no one employed at The Gilpin Hotel Casino or its subsidiaries is authorized to make an exception to this understanding, except the General Manager of The Gilpin Hotel Casino whose approval must be in writing.

Exh. 14 (emphasis added). Fejes argues, and I agree, that because of "some obviously omitted language this attempted disclaimer also has no meaning, is confusing and ineffective."

B. *The general EEOC statements contained in the Gilpin Casino's Handbook do not form a contract*

Gilpin Casino argues that Colorado law does not permit the enforcement of general equal employment opportunity statements as contracts. The Handbook states, in pertinent part:

EQUAL OPPORTUNITY EMPLOYMENT

The company is an equal opportunity employer and does not discriminate against its employees, or applicant for employment, because of race, religion, creed, national origin, handicap, age or sex. . . .

NON-DISCRIMINATION

We will not discriminate against any customer or employee in regard to race, religion, creed, national origin, handicap, age or sex. . . .

Exh.C, p. labeled G029.

■ While the existence of an implied contract is normally a factual issue for the jury, *Tuttle v. ANR Freight System, Inc.,* 797 P.2d 825, 828 (Colo.App.1990), "the issue may be decided as a matter of law if the alleged promises are nothing more than 'vague assurances.'" *Vasey v. Martin Marietta Corp.,* 29 F.3d 1460, 1464 (10th Cir.1994) citing *Dupree v. United Parcel Service,* 956 F.2d 219, 222 (10th Cir.1992).

■ In *Vasey,* the Tenth Circuit found that an equal opportunity memorandum virtually identical to Gilpin Casino's statement, was insufficient as a matter of law to constitute an enforceable implied contract. *Id.* at 1465. The *Vasey* court distinguished statements in *Tuttle* and *Stahl v. Sun Microsystems, Inc.,* 19 F.3d 533 (10th Cir.1994), similar to Gilpin Casino's EEOC statement by noting that the *Tuttle* and *Stahl* statements also contained detailed guidelines as to salary and lay offs. Because the *Vasey* equal opportunity memorandum did not contain such guidelines, the memorandum was deemed "too indefinite to constitute a contractual offer which would enable a court to determine whether a contract has been performed." *Vasey,* at 1465. Moreover, in ruling that it was a jury question whether a contract was formed, it was critical to the *Tuttle* court that the handbook contained a compensation statement detailing wage and salary guidelines. *Tuttle,* at 828, 830.

Like the *Vasey* statement and unlike the statements in *Tuttle* and *Stahl,* the Gilpin Casino Handbook contains no detailed or mandatory provisions or guidelines as to the equal employment opportunity statement. Consequently, I conclude that the above EEOC Handbook statements cannot serve to form the basis of Fejes' contract claim.

C. *The general statements of pregnancy non-discrimination contained in Gilpin Casino's Handbook do not form a contract*

■ Gilpin Casino's pregnancy provision states:

The Gilpin Hotel Casino does not discriminate on the basis of pregnancy, childbirth or related medical conditions. Pregnancy is treated like any other medical condition. If an employee is able to perform her job safely and effectively, she will be permitted to work at all times during pregnancy. If she is unable to perform all necessary job functions, she will be treated in the same manner as other temporarily disabled employees. This may include alternative assignments, modified tasks, or leave without pay.

The Gilpin Hotel Casino may require a pregnant woman to submit a doctor's statement concerning her inability to work before granting a leave of absence. Employees who plan to return to work following the birth of their baby are expected to

notify their supervisor promptly. The Gilpin Hotel Casino will make every effort to provide a job for the returning employee on the same basis as jobs are held open for employees on medical leave for other reasons.

The return to active employment should be within a reasonable time of delivery, but no sooner than considered medically safe by the employee's physician.

Exh. 14, labeled page G038.

Despite Gilpin Casino's argument that this provision contains "broad, general statements of policy," MSJ Brief p. 15, like *Tuttle*, this provision contains detailed guidelines about when an employee may continue to work during her pregnancy, and when the employee may return to work after delivery. Under these circumstances, I conclude that whether the pregnancy provision created a contract is a factual inquiry for the jury. Although Fejes' breach of implied contract claim cannot rest upon the EEOC statements in Gilpin Casino's Handbook, genuine issues of material fact otherwise remain and it is not entitled to judgment as a matter of law.

Accordingly, it is ordered that:

1. defendant's motion for summary judgment on claim one, Title VII gender and pregnancy discrimination, is GRANTED;

2. defendant's motion for summary judgment on claim two for violation of the FMLA is DENIED; and

3. defendant's motion for summary judgment on claim three for breach of contract is DENIED.