**Alicia MARTINEZ, Plaintiff,**

v.

**N.B.C. INC. and M.S.N.B.C. Inc., Defendants.**

**No. 98 Civ. 4842 (LAK).**

United States District Court, S.D. New York.

May 18, 1999.

Robert Swetnick, New York City, for plaintiff.

Susan Weiner, Brande Stellings, New York City, for defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

The transformation in the role of women in our culture and workplace in recent decades and the civil rights movement per- haps will be viewed as the defining social changes in American society in this centu- ry. Both have resulted in important fed- eral, state and local legislation protecting those previously excluded from important roles from discrimination in pursuit of the goal of equality. Nevertheless, few would deny that the problems facing women who wish to bear children while pursuing chal- lenging careers at the same time remain substantial. This case illustrates one of those problems.

The core claim in this case is that plain- tiff's employer, MSNBC Cable LLC ("MSNBC") was insufficiently accommo- dating of plaintiff's desire to pump breast milk in the workplace so that she could breast feed her child while also returning to work promptly after childbirth. She sues under the Americans With Disabili- ties Act of 1990[1] (the "ADA") and Title VII of the Civil Rights Act of 1964, as amended[2] ("Title VII"). Discovery having been completed, the defendants move for summary judgment dismissing the com- plaint.

### Facts

As the material evidentiary facts are not matters of controversy and the dispositive questions concern the scope of the antidis- crimination statutes upon which plaintiff relies, the facts may be summarized brief- ly.

The principal defendant, MSNBC, is a 24-hour-a-day, all-news cable television network launched in July 1996. In May 1996, it hired plaintiff Alicia Martinez as an associate producer at a salary of $47,- 000 per annum as a result of Martinez contacting Bob Epstein, an MSNBC exec- utive whom she had known in their prior jobs at CBS. Before accepting the position, Martinez told Epstein that she was preg- nant.

Martinez left on maternity leave in No- vember 1996 and returned to work part-

---

1. 42 U.S.C. § 12101 *et seq.*

2. *Id.* § 2000e *et seq.*

time in March 1997 as a producer in the tape acquisitions group, a higher level position than an associate producer. In June 1997, she shifted to full-time work, received a raise of $11,000 per annum, and began reporting to Ms. Pat Walker, a senior broadcast producer.

Martinez decided that she would breast feed her son. When she returned to work in March 1997, she bought an electric breast pump to pump breast milk to feed her child when she was not available to nurse him. With Walker's consent, Martinez left her work to pump breast milk three times a day for periods of about twenty minutes.

Martinez pumped breast milk in an empty edit room at MSNBC's New Jersey studio without incident from May until late July. At that point, someone tried to enter the room with a key while she was inside, and she became upset. Two similar incidents occurred over a few weeks. There is no reason to suppose that any of the people who tried the door while Martinez was in the room knew that she was there.

During this period, Martinez raised concerns about her privacy with MSNBC human resources officials. She rejected a suggestion that she simply put a "do not disturb" sign on the door. She rejected also, for a variety of reasons, a number of alternative sites offered by MSNBC.

When Martinez returned to full-time work in June 1997, her basic schedule was Monday, Tuesday and Friday from 7 a.m. until 4 p.m. and Wednesday and Thursday from 8 a.m. until 5 p.m. But it was well known that producers in her job at times were scheduled to work additional hours to handle breaking news stories, program needs and vacation schedules. Starting in August 1997, however, difficulties began concerning the schedule. Martinez contends that Walker became less accommodating of her scheduling concerns, which revolved about her child care needs. In consequence, she asked another MSNBC executive whether she could obtain a more regular schedule if she moved back to an

associate producer position. She was told that she would have a more regular schedule in such a position, but would have to work one weekend day and take less money.

On approximately September 1, Martinez met with Epstein and human resources personnel regarding the scheduling issue. Epstein suggested the associate producer job. Martinez objected because it would require her to work on weekends and said that she would be looking for a job elsewhere. She said that she wished to continue as a producer until she left provided MSNBC would give her several weeks' notice of any schedule changes. Epstein responded that she would have to work the hours required in order to remain a producer.

While the dates are unclear, Martinez complains also of three occasions on which a male co-worker allegedly made offensive comments regarding her breast pumping.

On August 31, Princess Diana was killed, resulting in enormous media coverage that continued through her funeral on September 6. Mother Teresa died on September 5, which also resulted in extensive media activity through her funeral on September 13. These events placed enormous demands on MSNBC, which was in "24 [hour] coverage" and brought in everyone in Martinez's department. Martinez, however, worked only one extra weekend shift during this period—the only weekend day on which she worked following her return from maternity leave.

On September 15, MSNBC notified Martinez that she would be moved three weeks hence to an associate producer position at a salary of $52,000 with a fixed Tuesday through Saturday shift from 7 a.m. to 4 p.m. In October, prior to her shift to the associate producer position, Martinez took a three week medical leave. When she returned, she asked—and was permitted—to take off every Saturday un-

til she resigned. In consequence, she never actually worked a single weekend day after being shifted to the associate producer position.

On December 12, 1997, Martinez resigned, effective December 23. She promptly found a new job with Ketchum Public Relations at an annual salary of $60,000, which exceeded her highest salary at MSNBC. She worked there for two weeks and then gave one week notice of resignation in order to accept a new part-time associate producer position at CBS, working 20 hours a week for an annual salary of $32,000.

On April 6, 1998, Martinez filed a charge of discrimination with the EEOC. The charge complained that MSNBC had "failed to provide [Martinez] with a safe, secure, sanitary and private area to breast pump" and that her complaint to human resources was followed by a course of retaliatory conduct including verbal harassment, schedule changes, and the demotion to associate producer.

Martinez subsequently filed this action. While the complaint is far from clear, a generous reading suggests that she asserts five legal theories: (1) discrimination in violation of the ADA on the theory that lactation is a disability, (2) retaliation under the ADA for complaining of the allegedly inadequate facilities provided for her breast pumping, (3) disparate treatment discrimination on the basis of gender under Title VII, (4) sexual harassment, and (5) retaliation in violation of Title VII.

---

3. *E.g.*, MINN.ST.ANN. § 181.939 (West 1998) (employer accommodation of breast pumping); N.Y.CIV.R.L. § 79–e (McKinney Supp. 1999) (breast feeding).

4. 42 U.S.C. § 12112(a).

5. *Id.* § 12111(8).

6. *Id.* § 12102(2).

7. *LaCoparra v. Pergament Home Centers, Inc.*, 982 F.Supp. 213, 228 (S.D.N.Y.1997) (internal quotation marks and citations omitted)

*Discussion*

## I. The Americans With Disabilities Act

The plaintiff opens her brief by arguing that breast feeding is beneficial to mothers and offspring. Counsel points out also that some legislatures have protected mothers who wish to breast feed or pump breast milk by requiring that employers accommodate their needs or by permitting breast feeding in public places.[3] The issue before the Court, however, is not whether such legislation is desirable, but whether the Congress already has enacted such requirements in the ADA.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual ...."[4] A "qualified individual with a disability" is one "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position ..."[5] And a "disability" is:

"(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

"(B) a record of such an impairment; or

"(C) being regarded as having such an impairment."[6]

Every court to consider the question to date has ruled that "pregnancy and related medical conditions do not, absent unusual conditions, constitute a [disability] under the ADA."[7] EEOC regulations, which are entitled to substantial deference in construing the ADA,[8] explicitly exclude "conditions, such as pregnancy, that are not

---

(pregnancy not a disability); *accord. Lehmuller v. Incorporated Village of Sag Harbor*, 944 F.Supp. 1087, 1093 (E.D.N.Y.1996) ("normal pregnancy ... does not impair any major life activity").

8. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Allegheny Elec. Coop., Inc. v. FERC*, 922 F.2d 73, 80 (2d Cir.1990).

the result of a physiological disorder." [9] One judge in this circuit has written, "[i]t is simply preposterous to contend a woman's body is functioning abnormally because she is lactating" [10]

This of course is not to say that a statute requiring employers to afford reasonable accommodation to women engaged in breast feeding or breast pumping would be undesirable. As noted, however, that determination is not for the Court, the only task of which is to determine whether the ADA so provides. It does not. Plaintiff's ADA claims therefore must be dismissed.[11]

## II. Title VII

### A. Gender Discrimination

■ Title VII forbids gender discrimination in employment, but gender discrimination by definition consists of favoring men while disadvantaging women or *vice versa*. The drawing of distinctions among persons of one gender on the basis of criteria that are immaterial to the other, while in given cases perhaps deplorable, is not the sort of behavior covered by Title VII.

This was made clear more than twenty years ago in *General Electric Co. v. Gilbert*.[12] The issue there presented was whether Title VII was violated when an employer adopted a health benefit plan that generally covered non-occupational sickness and accident but excluded disabilities arising from pregnancy. Noting that the benefits available to men and women under the plan were exactly the same, the Court held that Title VII simply did not apply because the failure to ensure "an *additional* risk, unique to women, . . . does not destroy the presumed parity of benefits, accruing to men and women alike, which results from the facially evenhanded *inclusion* of risks." [13]

*Gilbert* has been applied in circumstances similar to those at bar. In *Wallace v. Pyro Mining Co.*,[14] for example, the female plaintiff claimed that her employer violated Title VII's gender discrimination ban by declining to extend her leave of absence in order to accommodate her desire to continue breast feeding her newborn child. The district court held that the employer's action was not covered by the statute. It stated that "[w]hile breast-feeding, like pregnancy, is a uniquely female attribute, excluding breast-feeding from those circumstances for which [the employer] will grant personal leave is not impermissible gender-based discrimination under the principles set forth in *Gilbert*." [15] The Sixth Circuit affirmed.[16]

**9.** 29 C.F.R.Pt. 1630, App. § 1630.2(h), at 347 (1998).

**10.** *Bond v. Sterling*, 997 F.Supp. 306, 311 (N.D.N.Y.1998).

**11.** The conclusion that lactation or breast pumping is not a disability within the meaning of the ADA disposes of plaintiff's claim that the defendants violated that statute by retaliating against her for protesting their alleged failure to provide her with suitable facilities, as such a protest would not constitute protected activity. This makes it unnecessary to determine whether the ADA proscribes retaliation for opposing discrimination on the basis of covered disabilities, a question that is not free from doubt. Unlike Title VII, the ADA does not explicitly proscribe retaliation. The remedial provision of the ADA incorporates a number of portions of Title VII, but not Title VII's retaliation provision. 42 U.S.C. § 12117(a) (omitting reference to *id.*

§ 2000e–3). While one district court has assumed without discussion that the ADA does proscribe retaliation, the only authority it cited for that proposition does not support it, as it is a Title VII case. *EEOC v. MTS Corp.*, 937 F.Supp. 1503, 1512 (D.N.M.1996) (citing *Burrus v. United Tel. Co.*, 683 F.2d 339, 343 (10th Cir.1982)).

**12.** 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976).

**13.** *Id.* at 409–10 (emphasis in original).

**14.** 789 F.Supp. 867 (W.D.Ky.1990), *aff'd*, 951 F.2d 351 (6th Cir.1991) (table).

**15.** *Id.* at 869.

**16.** 951 F.2d 351. *See also Fejes v. Gilpin Ventures, Inc.*, 960 F.Supp. 1487, 1491–92 (D.Colo.1997) (breast-feeding and child rear-

Plaintiff does not dispute the foregoing analysis. Rather, she contends that she has a cause of action under Title VII on the theory of " 'sex plus' discrimination, when a person is subjected to disparate treatment based not only on her sex, but on her sex considered in conjunction with a second characteristic." [17] The second characteristic in this case, she argues, is her need or desire to pump breast milk.

■ "Sex-plus" discrimination is widely recognized.[18] It is impermissible to treat men characterized by some additional characteristic more or less favorably than women with the same added characteristic.[19] But that is not plaintiff's complaint. It cannot be for the quite simple reason that men are physiologically incapable of pumping breast milk, so plaintiff cannot show that she was treated less favorably than similarly situated men. Rather, she claims that she was the victim of gender discrimination because the employer allegedly subjected her to unfavorable treatment on the basis of a characteristic—breast feeding—that is unique to women. But the "sex-plus" theory does not go so far. Indeed, it logically cannot do so.

Precisely this question recently was before the Tenth Circuit in *Coleman v. B-G Maintenance Management of Colorado, Inc.,*[20] which aptly stated that "gender-plus plaintiffs can never be successful if there is no corresponding subclass of members of the opposite gender." [21] And the reason is plain:

> "[W]hen one proceeds to cancel out the common characteristics of the two classes being compared ( [e.g.,] married men and married women), as one would do in solving an algebraic equation, the canceled-out element proves to be that of married status, and *sex remains the only operative factor in the equation.*" [22]

On the other hand, if there is no comparable subclass of members of the opposite gender, the requisite comparison to the opposite gender is impossible.

While the Second Circuit in *Fisher I* did not make as broad a statement as the *Coleman* court, its holding (and emphasis of language) is completely consistent with *Coleman.* The Circuit stated. that "[t]o establish that Vassar discriminated on the basis of sex plus marital status, plaintiff must show that married *men* were treated differently from married *women.*" [23] And the cases to which *Fisher I* cites all support this proposition.[24]

In this case, there is and could be no allegation that Martinez was treated dif-

ing concerns not covered by Title VII as amended by Pregnancy Discrimination Act); *McNill v. New York City Dept. of Correction,* 950 F.Supp. 564, 569–71 (S.D.N.Y.1996) (same).

17. Pl.Mem. 13.

18. *See, e.g. Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 544, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971); *Fisher v. Vassar College,* 70 F.3d 1420, 1448 (2d Cir.1995) (*Fisher I*), *on reh'g in banc,* 114 F.3d 1332 (2d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998).

19. *Fisher I,* 70 F.3d at 1428.

20. 108 F.3d 1199, 1203 (10th Cir.1997).

21. *Id.* at 1204.

22. *Id.* at 1203 (quoting Lex K. Larson, Employment Discrimination § 40.04, at 40–12) (2d ed.1996) (emphasis added by Tenth Circuit).

23. *Fisher I,* 70 F.3d at 1446 (emphasis in original).

24. *See United Automobile Workers v. Johnson Controls,* 499 U.S. 187, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991) (policy did not apply to male employees in same way as to women, despite evidence of debilitating effects on both female and male reproductive systems); *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (women with gender stereotypes treated differently than similarly situated men); *Newport News Shipbuilding & Dry Dock Co. v. EEOC,* 462 U.S. 669, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983) (pregnancy medical benefits of male (spouses') employees and women employees different).

ferently than similarly situated men.[25] To allow a claim based on sex-plus discrimination here would elevate breast milk pumping—alone—to a protected status. But if breast pumping is to be afforded protected status, it is Congress alone that may do so. Accordingly, Martinez fails to state a *prima facie* claim of gender discrimination.

### B.  Hostile Work Environment Sexual Harassment

Reading her papers generously, Martinez contends that MSNBC is responsible for a work environment hostile to her breast pumping activity. She complains of alleged tasteless and offensive remarks directed at·the fact that she was engaged in pumping breast milk and asserts that she was treated unfairly by her supervisor, demoted, and subjected to onerous schedule changes because she was doing so.[26]

There is no suggestion here that MSNBC created or tolerated a work environment that was hostile to women in general. As plaintiff's memorandum makes clear, the assertion instead is a " 'sex-plus' hostile work environment" claim [27]—Martinez allegedly was singled out for abuse because she was breast pumping. And the problem with the claim is exactly the same as with the disparate treatment argument. As there were and could be no men with the same characteristic, all that is left, assuming the truth of Martinez's allegations, is a work environment hostile to breast pumping, not a work environment that subjected women to treatment less favorable than was meted out to men. While her allegations, if true, warrant sympathy for her and disapproval for those responsible, they do not make out a claim within the coverage of the statute.

### C.  Retaliation

Martinez claims also that MSNBC violated Title VII by retaliating against her in a variety of ways for complaining about its alleged failure to provide her with acceptable facilities in which to pump.

 Section 704 of the Civil Rights Act of 1964 makes it unlawful, in relevant part, "for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter ..." [28] As the statute indicates, in order to make out a legally sufficient claim of Title VII retaliation, the plaintiff must show that the activity she opposed was a practice rendered unlawful by Title VII.[29] Here, the activity Martinez allegedly opposed—MSNBC's alleged failure to provide her with acceptable facilities for breast milk pumping—whatever else may be said of it, is not an employment practice covered by Title VII. Accordingly, her retaliation claim fails.

### Conclusion

For the foregoing reasons, defendants' motion for summary judgment dismissing the complaint is granted. In view of this disposition, it is unnecessary for the Court to consider the·plethora of other arguments advanced by defendants in support of this result.

SO ORDERED.

---

**25.** While Martinez's complaint appears to allege that she suffered disparate treatment in the failure of MSNBC to promote her, she appears to have abandoned that claim in her response to the motion. In any case, there is no evidence of any such failure.

**26.** Pl.Mem. 16–17.

**27.** *Id.* 16.

**28.** 42 U.S.C. § 2000e–3(a). ·

**29.** *See, e.g., Harper v. Blockbuster,* 139 F.3d 1385, 1388 (11th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 509, 142. L.Ed.2d 422 (1998).