846 F.2d 927
 46 Empl. Prac. Dec. P 37,984
 Rona BARRASH, Plaintiff-Appellee,
v.
Otis R. BOWEN, Secretary, Department of Health and Human
Services, Defendant-Appellant.
Rona BARRASH, Plaintiff-Appellant,
v.
Otis R. BOWEN, Secretary, Department of Health and Human
Services, Defendant-Appellee.
 Nos. 86-3123, 86-3129.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 5, 1987.
Decided March 24, 1988.
 
 John Samuel Koppel, Appellate Staff, Civil Div., Dept. of Justice (Linda A. Ruiz, Office of Gen. Counsel, U.S. Dept. of Health & Human Services, Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Breckinridge L. Willcox, U.S. Atty., Baltimore, Md., William Kanter, Appellate Staff, Civil Div., Dept. of Justice, Washington, D.C., on brief), for Bowen.
 Thomas J.S. Waxter, Jr. (Donald R. Delorenz, Semmes, Bowen & Semmes, Baltimore, Md., on brief), for Barrash.
 Before WINTER, Chief Judge, HAYNSWORTH, Senior Circuit Judge, and JOHN R. HARGROVE, United States District Judge, sitting by designation.
 PER CURIAM:
 
 
 1
 The district court found that the plaintiff's discharge, because of unauthorized absence from a job with the Social Security Administration, was a violation of the plaintiff's constitutional and contractual rights. It ordered her reinstatement and awarded her back pay in the amount of $25,432.95, and attorneys' fees of approximately $74,000. Since we find that her discharge was lawful, we reverse.
 
 I.
 
 2
 The plaintiff is a young married woman, and the controversy is an outgrowth of the Social Security Administration's administration of its maternity leave policy. After the birth of her first child in 1982, she was granted a full six months maternity leave beginning with the birth of her baby in order that she might provide breast-feeding. Before the birth of her second child, however, the SSA had been ordered to tighten its grants of administrative leave without pay in order to reduce costs and increase efficiency. In the spring of 1984, when she was expecting the birth of her second child, the plaintiff again requested a full six months leave without pay in order that she might provide breast-feeding for the baby. She was granted six weeks of such leave.
 
 
 3
 In April 1984, after the birth of her second child, the plaintiff again requested six months leave beginning with the date of birth. She submitted a note from her pediatrician who stated that he recommended a full six months maternity leave "for medical and psychological reasons." The plaintiff's supervisor granted leave through May 29, 1984, and informed the plaintiff of the type of documentation necessary to support a claim of leave based upon incapacitation. The plaintiff then submitted a note from her own physician that included a statement that she was incapacitated, but gave no reason for the conclusion. There was also a second note from her pediatrician recommending that six months leave be taken in order to breast-feed the baby. The submissions were found insufficient, but, nonetheless, the plaintiff's leave was extended to June 12, 1984.
 
 
 4
 On June 4, Mrs. Barrash called the deputy director of the appeals processing division and told him that she intended to take a full six months of leave. She did not return to work on June 13 and the manager of her branch office wrote to her on June 21. He informed her in the letter that she was AWOL, and directed her to return to work by July 2, 1984. The letter also contained a warning that a failure to return to work at the stated time could lead to disciplinary action such as suspension or termination.
 
 
 5
 Dr. David Fouts, the medical director of SSA, became involved in the case. After reviewing the file, he talked with the plaintiff's pediatrician. The pediatrician stated that he routinely recommended six months of breast-feeding for newborn babies. Dr. Fouts concluded that there were insufficient medical grounds for a grant of six months maternity leave.
 
 
 6
 On June 14, 1984, Mrs. Barrash filed a grievance in which she complained of the denial of her six months leave. In the grievance procedure, Mrs. Barrash was represented by a union representative through whom she concluded a settlement of the grievance on July 16, 1984. Under the settlement agreement, the plaintiff's AWOL status was cancelled, leave was extended until July 30, 1984, and the SSA agreed to reassign the plaintiff to another division closer to her home.
 
 
 7
 The plaintiff did not report for duty on July 30. Instead, her husband called in, reported that she was ill and requested sick leave. Her supervisor again wrote Mrs. Barrash requesting documentation of the claim of illness and warning that the plaintiff would be AWOL if she did not submit adequate documentation. The plaintiff then submitted a letter from another physician, a Dr. Ellin, in which he stated that the plaintiff was suffering from "post-partum anxiety," and Dr. Ellin recommended that she be given additional leave for one month beginning August 4. Dr. Fouts contacted Dr. Ellin and concluded there was insufficient reason for a grant of four additional weeks of leave. Nevertheless, the plaintiff's leave was extended to September 10, 1984, beyond the date requested by Dr. Ellin.
 
 
 8
 The plaintiff's supervisor again wrote the plaintiff instructing her to return to work no later than September 10, and warning her that she faced disciplinary action if she did not.
 
 
 9
 The plaintiff did not report to work on September 10, but she submitted a memorandum of yet another physician stating that she had developed an anxiety reaction to her work and recommended that she be transferred. Her supervisor again wrote to her informing her that her current excuse was inadequate and that she was on AWOL status. He informed her that if she did not report to work by September 24, she would be subject to disciplinary action.
 
 
 10
 The plaintiff did not return to work on September 24. Her supervisor then proposed that she be terminated for failure to adhere to the rules for obtaining leave and for having been AWOL from September 10 through September 25, 1984. The plaintiff was informed of the proposed action, and she was formally discharged by the SSA on November 4, 1984.
 
 
 11
 Plaintiff sought review of her discharge by the Merit Systems Protection Board. The MSPB upheld the discharge. It found that the dispute about maternity leave had been terminated by the grievance settlement agreement. It found that the plaintiff had submitted insufficient justification for a grant of sick leave beginning September 10. Nevertheless, it reviewed the plaintiff's maternity leave claims on the merits. It found that the discharge was not unreasonable, and that it promoted the efficiency of the service as required by 5 U.S.C. Sec. 7513(a). The Board rejected the plaintiff's Title VII and fifth amendment claims.
 
 
 12
 The district court found that the dispute centered around the denial of maternity leave, concluding that denial of the full six months of such leave was a violation of the collective bargaining agreement, and that the new leave policy could not be lawfully applied to young mothers wishing to breast-feed their babies for, as to them, the new leave policy had a disparate impact. As indicated, it awarded the plaintiff all relief requested, including the grant of attorneys' fees of approximately $74,000.00.
 
 II.
 
 13
 It is likely that this controversy arose out of the plaintiff's unwavering determination to take maternity leave for a full six months following the birth of her baby. That was her initial request, and she staunchly refused to return to work any sooner. The employer's warnings of disciplinary action, including termination of her employment if she failed to meet successively established deadlines, went unheeded. After the settlement of her grievance, her requests for further extensions of her leave were stated to be because of her own illness, but it is apparent that these claims of incapacity were insufficiently documented. She succeeded in obtaining extensions of her leave until September 10, more than five months after the birth of her baby. Her pediatrician testified that while he routinely recommended six months of breast-feeding, a termination of breast-feeding after five months would have involved no adverse effect upon the child. Nevertheless, she was adamant in her refusal to return to work. The last warning she received after her failure to report to work on September 10 informed her that unless she reported for work by September 24, she would be subject to disciplinary action. Apparently, she could have preserved her employment relationship by returning to work on September 24, five and one-half months after the birth of her child, but she did not do it. The plaintiff had defined her own rules to govern her employment relationship, and she conceded nothing to the employer's right to fashion and enforce rules governing that relationship.
 
 
 14
 The SSA had not only been tolerant in granting successive extensions of authorized leave; it had sought to accommodate her by transferring her to an office nearer her home. That, of course, was part of the grievance settlement agreement, but the plaintiff declined to comply with the settlement agreement, claiming illness on her part.
 
 
 15
 Though in the end, as it was in the beginning, the controversy was over the plaintiff's demand for a full six months of maternity leave, we cannot ignore the fact that the plaintiff's claim of entitlement to six months maternity leave was settled in July 1984. The MSPB did not ignore the settlement of that claim. As it did, we must decline to review the merits of the plaintiff's claim that the collective bargaining agreement gave her an entitlement to a full six months of maternity leave. The settlement agreement of July 16, 1984, was signed on the plaintiff's behalf by an authorized union representative. The plaintiff has not questioned the authority of the union representative to sign the agreement; she makes no claim that the agreement was not actually authorized by her, but she resorted to claims of personal illness to avoid compliance with her part of the bargain.
 
 
 16
 For those reasons, the district court should not have reviewed the merits of the claim asserted by the plaintiff in the grievance proceeding. Since she has offered no support for her later claim of incapacitation because of illness, the only thing left in the case is the claim that the SSA had no right under Title VII or under the Constitution to enforce the more restricted leave policy it had adopted in 1983.
 
 III.
 
 17
 Reserving that claim, we conclude that the finding of the MSPB that termination of the plaintiff's employment was appropriate and would promote the efficiency of the service must be accepted. We can review the finding of the MSPB only for arbitrariness, capriciousness or an abuse of discretion. See Phillips v. Bergland, 586 F.2d 1007, 1010-12 (4th Cir.1978). The action of the MSPB in this case suffered no such infirmity. The decision of the Board foreclosed further pursuit of the claim of entitlement to sick leave.
 
 
 18
 Since the plaintiff had been an exemplary employee while at work and since a hiring freeze may have made her replacement difficult, the district court concluded that her termination was neither reasonable nor for the good of the service. The system tends to break down, however, when employees undertake to exercise managerial functions or to dictate managerial decisions affecting the employment relationship.
 
 
 19
 Under the applicable rules and regulations, management had the discretionary authority to grant leave without pay and to determine its duration. Better employees, just as the worst, may not dictate the exercise of that discretionary, managerial function. Bedlam would ensue if the better employees were permitted to determine for themselves whether or not they should be granted leave without pay, and the duration of any such leave. Permitting one of the better employees to do so could create serious morale problems for all of the other employees.
 
 
 20
 The SSA displayed extraordinary patience in dealing with the plaintiff's claim of entitlement to leave without pay. Informed by her at an early stage that she intended to take a full six months of such leave, the SSA granted successive extensions until it had authorized over five months of such leave. When the plaintiff conceded nothing, the SSA could not reasonably have been expected to permit her to succeed fully in dictating the terms of her leave.
 
 IV.
 
 21
 We are far from certain that any Title VII or constitutional claim remained viable after settlement of the grievance and the decision of the MSPB.
 
 
 22
 Nor do we believe that any such claim was properly subject to disparate impact analysis. Under the applicable provisions in the Federal Personnel Manual, Chapter 630, subchapter 12, the grant of leave without pay is discretionary, and under Article 31, Sec. 7 of the collective bargaining agreement, is not demandable by the employee. Ordinarily, disparate impact analysis is appropriate only in cases of non-discretionary acts.
 
 
 23
 Under Article 31, Sec. 4 of the collective bargaining agreement, sick leave is available in cases of incapacity due to illness or injury, and to incapacity due to pregnancy and confinement for the delivery of a child.
 
 
 24
 Under the Pregnancy Discrimination Act of 1978, 42 U.S.C. Sec. 2000e(k), pregnancy and related conditions must be treated as illnesses only when incapacitating.
 
 
 25
 SSA Personnel Manual for Supervisors, Chapter S630, subchapter 1, Appendix L (1976), Sec. F, provides for leave without pay to a young mother during a period of adjustment or to enable her to make necessary arrangements for child care. However, the regulations and rules dealing with grants of leave without pay are applicable, and the granting or withholding of such leave is discretionary.
 
 
 26
 Hence, this case seems inappropriate for disparate impact analysis.
 
 
 27
 The district court, however, apparently took the view that a directive of the Office of Disability Operations in 1983 substantially limited the discretionary authority of managers to grant leave without pay. Theretofore, apparently, applications for leave without pay had been granted with great liberality. The March 1, 1983, memorandum stated that in the year ending July 1982 in the SSA headquarters over 652,000 hours of leave without pay had been taken. This was thought to have been excessively costly in terms of overtime pay for other employees and other measures to replace employees on leave status. A reduction in the use of leave without pay was directed.
 
 
 28
 The district court reasoned that the directive had a disparate impact upon new mothers, making the case appropriate for disparate impact analysis.
 
 
 29
 We do not think so. A substantial curtailment of the liberality with which leave without pay had been granted was directed, but the authorization of such leave on a discretionary basis remained in place. The directive only required managers to consider the costs and consequences before granting requests for leave without pay.
 
 
 30
 Should we accept the district court's premises, however, the plaintiff made out no case.
 
 
 31
 There was data showing that several women received maternity leave without pay of six months or more in 1983. The figure declined in 1984, and no such extended leaves were granted in 1985. Those figures were compared with figures showing that the number of men on sick leave of six months or more increased over the same three year period, but the data was not comparable. The men were incapacitated, while the women were not. If the required documentation was provided, the men were entitled to the sick leave they received, while maternity leave without pay was not available as a matter of right but only on a discretionary basis. One can draw no valid comparison between people, male and female, suffering extended incapacity from illness or injury and young mothers wishing to nurse little babies.
 
 
 32
 Any limitation upon the liberality with which leave without pay had been granted in earlier years would have an adverse impact upon young mothers wishing to nurse their babies for six months, but that is not the kind of disparate impact that would invalidate the rule, for it shows no less favorable treatment of women than of men.
 
 
 33
 The ODO directive was solely concerned with perceived excesses in the discretionary grant of leave without pay. Disparate impact cannot be shown by data extracted from a program unaffected by the challenged directive. Otherwise, the plaintiff's claim is simply that because incapacitated men and women are entitled to sick leave during incapacitation, excessive and wasteful liberality in the discretionary grant of leave without pay can never be limited.
 
 V.
 
 34
 Finally, the plaintiff cross-appeals from the denial of a fifth amendment claim.
 
 
 35
 She may have a constitutional right to nurse her baby for six months, or even longer, that would inhibit intrusive governmental interference with it, but the plaintiff here asserts no right to be let alone while she cares for her baby in the manner she thinks best. Her claim is one of entitlement to the full six months of maternity leave she demanded. A public employer may have some duty to take reasonable steps to accommodate the needs of young mothers and their babies, but the measure of any duty of reasonable accommodation is not the same as the measure of the mother's right to care for her child as she pleases.
 
 VI.
 
 36
 While we affirm the dismissal of the plaintiff's fifth amendment claim, we reverse the judgment entered for the plaintiff.
 
 
 37
 REVERSED.