**Karen R. BARNES, Plaintiff,**

v.

**HEWLETT–PACKARD COMPANY, Defendant.**

Civ. No. PJM 92–2473.

United States District Court,
D. Maryland.

March 7, 1994.

Suzanne Levin, Rockville, MD, for plaintiff.

Thomas J. Flaherty, Hunton & Williams, Richmond, VA, A. Neal Barkus, and James J. Rooney, Hunton & Williams, Washington, DC, for defendant.

**OPINION**

MESSITTE, District Judge.

I.

Karen Barnes, formerly a sales representative with Hewlett–Packard Company, sues her former employer, alleging sexual discrimination in employment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. When she returned to work in September 1991, having been away for approximately one year by reason of combined maternity, medical, and parental leave, she contends she was demoted and a few weeks later constructively discharged, allegations which Hewlett–Packard (H–P) vigorously denies.

Because the Court decides that Barnes' claim is not assertible under Title VII, it is not necessary to resolve such factual disputes as may exist between the parties. The Court grants Defendant's Motion for Summary Judgment.

II.

Barnes was an employee of H–P for approximately 14 years, from 1977 until 1991. She held a variety of positions with the firm in California prior to becoming a sales representative in its Rockville, Maryland, office in January 1988.

In late July 1988, Barnes took leave from H–P to have a child, returning to work on November 1 of that year. She was reinstated to her previous job and makes no complaint regarding her treatment in connection with that pregnancy. She continued with her training and apparently functioned successfully as a sales representative for the next two years.

In September 1990, Barnes, again pregnant but this time with twins, requested and received medical leave due to back pain and insomnia, also receiving permission to remain on leave through her pregnancy. This was consistent with H–P's policy, which not only granted expectant mothers leave to give birth, but medical leave in connection with any disability related to the pregnancy.

Barnes' twins were born in February 1991, and her maternity leave eventually extended to May 17.[1] Her request for leave of absence thereafter bears quoting in full:

1. In March, Barnes asked H–P if she could go on    part-time status for 2–4 months when she re-

I would like to request a *parental* leave of absence for the period beginning May 17, 1991 and ending on my return to work on September 16, 1991.

Reason: I gave birth to twins on Feb. 19 and one of my twins needs medical treatments in the next 3–9 months which will be both time consuming and emotionally trying. (Emphasis supplied)

H–P's policy regarding the interplay of maternity and parental leave as of that time is particularly noteworthy:

An employee on a medical leave for maternity purposes will have the option of a maximum four-month parental leave after the doctor has released her to work.

**Note: The parental leave for the birth mother is not an extension of the medical leave but is, rather, a personal leave with a job guarantee for the four-month period following the doctor's release.** (Emphasis in original)

Barnes in fact remained off the job until September 16, but alleges that from the moment she returned she was met with discrimination. She suggests first that "she was treated in a cold and harassing manner, given no tasks, direction or sales territory." Next she says that she was "demoted to the position of staff representative and although she would have no immediate reduction in pay (although there was no longer a commission potential and she could lose her company car), she would be ineligible to get a raise 'for a very long time.'" Finally she contends that, following her return, two sales representative positions opened up and were filled by two males, rather than by her. Although H–P offered her the opportunity to find other positions within the company with her salary guaranteed for two years, Barnes chose in December 1991 to sign a Voluntary Severance Incentive, received one year's salary as severance pay, and departed.

Almost immediately Barnes arranged a new job for herself in California at an annual salary $24,000 higher than her salary at H–P. Claiming the loss of certain other benefits, she eventually brought the present Title VII action.

## III.

Barnes complains that she was subject to discrimination "because of her sex (availing herself of parental leave) in violation of Title VII." (Complaint, par. 23). Indeed, it is only on the basis of parental leave that she can claim whatever discrimination may have ensued, not pregnancy leave. As indicated, in her final Request for Leave she specified it was "parental" leave she was seeking. H–P's policy, moreover, made it clear that the four-month parental leave following maternity leave was "not an extension of medical leave, but ..., rather, a personal leave...." Finally, it is undisputed that Barnes' old job was waiting for her when her maternity leave ended in May 1991.[2]

Title VII, as amended by the Pregnancy Discrimination Act of 1978 (PDA), makes it illegal to discriminate "against any individual with respect to ... conditions of ... employment ... because of or on the basis of pregnancy, child birth, or related medical conditions." 42 U.S.C. § 2000e(k). However logical it may be to argue, as Barnes does, that parental leave following maternity leave is gender-based and thus protected under Title VII, that proposition has been consistently rejected from the outset.

Analysis begins with the legislative history of the PDA, found in H.R.Rep. No. 95–948, 95th Cong., 2d Sess., 5, reprinted in 1978 U.S.C.C.A.N. 4749, 4753:

turned from leave. H–P denied this request, which it had every right to do. It is conceded, however, that Barnes could have returned to her previous position on a full-time basis at the end of her maternity leave.

2. Barnes asserts that H–P must have known in May 1991, when she sought parental leave, that she might be subject to demotion when she returned in September. She also says that H–P had an obligation to warn her of the possible consequences of her taking parental leave immediately following maternity leave. H–P, however, firmly denies that Barnes' job was targeted in May of 1991 and Barnes can point to no credible evidence that contradicts this. Moreover, the Court is aware of no authority, nor has Barnes cited any, to the effect that H–P had a legal obligation to describe to Barnes the universe of possible consequences that might attend her choice to go on parental leave.

... Testimony before the Committee indicates that in 95 percent of the cases, the time lost from work due to pregnancy of 6 weeks or less, so barring any medical complications, this period would be the normal time a pregnant woman would be covered. If, however, medical complications arose, which is the case in about 5 percent of all pregnancies, these complications should be covered by the same time limits or dollar amounts otherwise provided disabled workers.

*Id.* at 4753.

Specifically on the matter of child care, the Committee Report observed:

For example, if a woman wants to stay home to take care of the child, no benefit must be paid because this is not a medically determined condition related to pregnancy. *Id.*

All pertinent authorities since the inception of PDA are in accord that Title VII does not prohibit discrimination on the basis of child-rearing activities or parental leave. Among the EEOC Guidelines Questions and Answers on the PDA, for example, is one specifically addressed to child care leave:

Q. Must an employer grant leave to a female employee for childcare purposes after she is medically able to return to work following leave necessitated by pregnancy, childbirth or related medical conditions?

A. *While leave for childcare purposes is not covered by the Pregnancy Discrimination Act,* ordinary Title VII principles would require that leave for childcare purposes be granted on the same basis as leave which is granted to employees for other non-medical reasons. For example, if an employer allows its employees to take leave without pay or accrued annual leave for travel or education which is not job related, the same type of leave must be granted to those who wish to remain on leave for infant care, even though they are medically able to return to work. (Emphasis supplied)

29 C.F.R. 1604.18(A) Appendix.

The case of *Record v. Mill Neck Manor Lutheran School,* 611 F.Supp. 905 (E.D.N.Y. 1985) states the proposition more directly:

Title VII, as amended by the Pregnancy Discrimination Act, does not protect people wishing to take child-rearing leaves as opposed to women wishing to take pregnancy leaves. *See,* Note, *Sexual Equality Under the Pregnancy Discrimination Act,* 83 Colum.L.Rev. 690, n. 2 (1983); Equal Employment Opportunity Commission–Guidelines, 29 C.F.R. § 1604, App. (1984) (Question and Answer 18); 1 A. Larson & L.K. Larson, *Employment Discrimination–Sex* § 38.70–Parental Leave. A disservice is done to both men and women to assume that child-rearing is a function peculiar to one sex. Whether leaves for child-rearing should be protected from employer discrimination, as leaves for jury duty are, is not a question for this court to determine. Plaintiff does not claim that defendant's actions have a disparate impact on women nor that child-rearing leaves are only granted to women.

611 F.Supp. at 907.

*See also Payseur v. W.W. Grainger, Inc.,* 52 Fair Empl.Prac.Cas. (BNA) 789; 53 Empl.Prac.Dec. (CCH) P 39,938, 1989 WL 152583 (N.D.Ill.1989).

The more recent case of *Wallace v. Pyro Mining Company,* 789 F.Supp. 867 (W.D.Ky. 1990), *aff'd* 951 F.2d 351 (6th Cir.1991) makes the point more emphatically still. There a mother alleged discrimination on the basis of sex when she was denied personal leave so that she could breast-feed and wean her newborn child. Finding that plaintiff had failed to state a claim under Title VII as amended by the PDA, the court held:

... While it may be that breast-feeding and weaning are natural concomitants of pregnancy and childbirth, they are not "medical conditions" related thereto. Admittedly, the act does not define what constitute "related medical conditions." However, the substantive references to "related medical conditions" within that legislative history are all in the context of the extent to which female employees can be denied medical benefits, such as sick leave and health insurance coverage, arising from pregnancy and childbirth. Further, Congress' express intent was to codify pre-Gilbert EEOC guidelines that required

"employers to treat disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth and recovery therefrom as all other temporary disabilities." H.R. No. 948, 95th Cong. 2, reprinted in 1978 U.S. Code Cong. & Admin.News, 4749, 4750 (emphasis added). We believe these factors indicate Congress' intent that "related medical conditions" be limited to incapacitating conditions for which medical care or treatment is usual and normal. Neither breast-feeding and weaning, nor difficulties arising therefrom, constitute such conditions.

789 F.Supp. at 869.

Finally, although the U.S. Court of Appeals for the Fourth Circuit has not spoken directly to the question now before the Court, it came very close to doing so in *Barrash v. Bowen*, 846 F.2d 927 (4th Cir. 1988). In holding that denial of breast-feeding leave did not give rise to a disparate impact claim, the Court stated that "(u)nder the Pregnancy Discrimination Act of 1978, pregnancy and related conditions must be treated as illnesses only when incapacitating." *Id.* at 931. And further:

> ... One can draw no valid comparison between people, male and female, suffering extended incapacity from illness or injury and young mothers wishing to nurse little babies.

*Id.* at 931–932.

In the present case, it can hardly be said that the desire to provide medical treatment to a newborn child, which Barnes sought leave to pursue here, is any more a "related medical condition" than the desire to breast-feed or wean a child. There is, in sum, a point at which pregnancy and immediate post-partum requirements—clearly gender-based in nature—end. and gender-neutral child care activities begin. The quietus to Barnes' argument of sex discrimination in this case is that attending to the medical needs of one of her children—the reason she requested parental leave—could have been administered as well by her husband as by herself.

The Court is aware that Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 *et seq.*, provides protection to certain covered employees who take parental leave. That Act, it may be noted, does not amend Title VII, but is part of Title 29 which deals with "Labor" and contains its own enforcement mechanism. *Id.* at § 2617. While it is doubtful that anything in the present case would constitute a violation of the FMLA, what is clear is that the relevant provisions of the Act only took effect on August 5, 1993, well after events that form the basis of the present suit. The Act thus need not be considered further.

The Court will enter a separate Order granting Defendant's Motion for Summary Judgment and entering final judgment in its favor.

### ORDER AND FINAL JUDGMENT

Upon consideration of Defendant's Motion for Summary Judgment and Plaintiff's Opposition thereto, it is this 7th day of March, 1994

ORDERED that Defendant's Motion be and the same is hereby GRANTED; and it is further

ORDERED that final judgment is hereby entered in favor of Defendant Hewlett–Packard and against Plaintiff Karen Barnes, costs to be paid by Plaintiff.