Jennifer L. PAGE, Plaintiff,

v.

**CONNECTICUT DEPARTMENT OF PUBLIC SAFETY, Division of State Police, and Louis Lacaprucia Defendants.**

**No. 3:00 CV 0360(GLG).**

United States District Court, D. Connecticut.

Jan. 24, 2002.

John R. Williams, Williams & Pattis, New Haven, CT, for plaintiff.

Lynn D. Wittenbrink, Attorney General's Office, Hartford, CT, for defendants.

## DECISION

GOETTEL, District Judge.

This is an employment discrimination action brought by plaintiff, Jennifer Page, against her employer, the Connecticut Department of Public Safety, Division of State Police (hereinafter referred to as the "Department of Public Safety"), and Louis Lacaprucia (hereinafter referred to as "Lacaprucia"). Plaintiff claims that she was discriminated against on the basis of her gender and pregnancy, and retaliated against because of her objection to these practices. The Complaint contains three counts. The first count alleges a violation by defendant Department of Public Safety of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). The second count alleges a violation by both defendants of Connecticut's Fair Employment Practices Act ("CFEPA"), Conn. Gen.Stat. §§ 46a–58(a), 46a–60. The third count alleges a violation of plaintiff's First and Fourteenth Amendment rights by defendant Lacaprucia. Defendants have moved for summary judgment on all counts of the Complaint. For the reasons set forth below, defendants' motion [Doc. # 23] is GRANTED.

## I. *Summary Judgment Standard*

A motion for summary judgment may not be granted unless the Court determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986). A fact is "material" if it may affect the outcome of the suit under governing law. *Id.*

The burden of demonstrating the absence of a genuine dispute as to a material fact rests with the party seeking summary judgment, in this case defendants. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Defendants must identify those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which they believe demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In order to avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. The nonmovant, plaintiff, "must do more than present evidence that is merely colorable, conclusory, or speculative and must present 'concrete evidence from which a reasonable juror could return a verdict in [her] favor ...' " *Alteri v. General Motors Corp.*, 919 F.Supp. 92, 94–95 (N.D.N.Y.1996) (quoting *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505).

In assessing the record to determine whether there are any genuine issues of material fact, the Court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought. *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir.1997). Additionally,

the Second Circuit has held that a district court should exercise particular caution when deciding whether summary judgment is appropriate in an employment discrimination case. *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1224 (2d Cir.1994). Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's documents, a trial court must be particularly cautious about granting summary judgment when the employer's intent is at issue. Affidavits and depositions must be scrutinized for circumstantial evidence which, if believed, would show discrimination. *Id.*

Accordingly, we set forth the facts in the light most favorable to plaintiff.

## II. *Facts*

The Court accepts the following facts as true, except where noted, for the purposes of defendants' summary judgment motion.

Plaintiff was hired in January 1985 and is still employed by the State of Connecticut, Department of Public Safety as a State Police Dispatcher. (Defs.' Rule 9(c)1 Statement of Facts ¶ 1.)[1] Plaintiff took maternity leave in 1989, 1994, 1996, and 1998. (Defs.' ¶ 2.) Upon plaintiff's return from her most recent maternity leave on November 28, 1998, defendant Lacaprucia was the Commanding Officer of the troop at which plaintiff worked; Master Sergeant Mattson ("Mattson") was the executive officer who supervised civilian employees, including dispatchers. (Defs.' ¶¶ 3–5.)

### a. *The Fisher Dispute*

In mid-December 1998, plaintiff was involved in two disputes with a co-worker, dispatcher Susan Fisher ("Fisher"). Fisher submitted a written complaint to Mattson alleging that, on both occasions, plain-

---

1. Defendants' Rule 9(c)1 Statement of Facts is hereinafter referred to as "Defs.' ¶ _."

tiff had confronted her in a threatening and intimidating manner. (Defs.' ¶¶ 6, 8.) Plaintiff disputes defendants' version of the incidents and provides support for her version with the following: (1) her own deposition testimony; (2) her answers to written interrogatories; and (3) her informational memo of December 31, 1998, to Mattson outlining her recollection of the events. (Pl.'s Rule 9(c)2 Statement of Facts, Exs. A–C.)[2]

On December 21, 1998, defendant Lacaprucia initiated an Internal Affairs Investigation ("IAI") and appointed Mattson to conduct the investigation. Plaintiff was notified that day that an investigation had been commenced. (Defs.' ¶¶ 10–11.) During the investigation, Mattson reviewed certain information, conducted interviews and received statements from witnesses to the incidents. (Defs.' ¶¶ 12, 13.)

On January 26, 1999, Mattson completed his report, finding that plaintiff had intimidated Fisher and interfered with desk operations. Since Mattson had no first-hand knowledge of the incidents, his conclusions were based upon witnesses' accounts of those incidents. (Defs.' ¶ 15.) Plaintiff acknowledges that Mattson submitted such a report, but disputes its contents and findings. (Pl.'s ¶ 15.) Mattson recommended that plaintiff be charged with improper behavior on the ground that the Connecticut State Police Rules did not allow hostile behavior in the workplace. (Defs.' ¶¶ 17, 18.) Lacaprucia and his supervisor, Major Rearick, Eastern District Commanding Officer, reviewed the report and concluded that plaintiff should be given two days' suspension with the option to stipulate to the discipline and take a one day suspension instead. (Defs.' ¶ 20.) In her Rule 9(c) statement, plaintiff disagrees with defendants' contention, presumably objecting to the outcome of the investigation and the characterization by Lacaprucia and Rearick of her conduct as "serious." It is undisputed that, following the investigation, plaintiff refused to stipulate to the disciplinary action and was suspended for two days. (Defs.' ¶¶ 21, 22, 23, 24.)

On March 16, 1999, plaintiff filed a grievance (a "Step III grievance") with her union in accordance with the provisions of her collective bargaining agreement; the grievance was then filed with the Office of Labor Relations. (Defs.' ¶ 25, 26.) Plaintiff apparently insisted that both her attorney and her union be present at the hearing, but her union objected to this demand. As a result of the deadlock, plaintiff's grievance was denied without a hearing on February 2, 2000, and was withdrawn by plaintiff's union representative in May 2000. (Defs.' ¶¶ 27, 28.).

**b.** *Other Incidents*

In December 1998, police dispatchers, including plaintiff, were told that they were required to stay until the end of their shifts. (Defs.' ¶ 29.) In June 1999, dispatchers were told again that they were required to stay until the end of their shifts, and Mattson held a meeting to discuss dispatchers' duties. (Defs.' ¶ 30.) On July 4, 1999, Sergeant Izzarelli complained to Mattson that he had seen plaintiff leaving fifteen minutes before the end of her shift without her supervisor's permission. (Defs.' ¶ 31.) Plaintiff acknowledges that such a complaint was made by Izzarelli, but otherwise "disagrees" with defendants' statement, without further explanation. (Pl.'s ¶ 31.)

On July 9, 1999, dispatcher White told Mattson that plaintiff made certain derogatory comments about the administration and claimed that upper management was "after" her. (Defs.' ¶ 32.) Plaintiff admits

**2.** Plaintiff's Rule 9(c)2 Statement of Facts is hereinafter referred to as "Pl.'s ¶ __."

that White may have made such a statement to Mattson but otherwise "disagrees" with defendants' statement, again without further explanation. (Pl.'s ¶ 32.) On July 18, 1999, dispatcher Faith Gentile told Mattson that plaintiff had refused to perform certain tasks, claiming that such tasks were not her job. (Defs.' ¶ 33.) Again, plaintiff admits that Gentile may have made such a statement to Mattson but otherwise "disagrees" with defendants' statement, without elaborating further. (Pl.'s ¶ 33.)

On July 19, 1999, a meeting was held among plaintiff, Lacaprucia, and Mattson at which plaintiff was orally counseled for three incidents of unacceptable work behavior. (Defs.' ¶ 34.) Plaintiff admits that the meeting was held but appears to dispute the incidents for which she was counseled. (Pl.'s ¶ 34.) On August 5, 1999, the oral counseling was put in writing. (Defs.' ¶ 35.) Before that happened, however, after the meeting of July 19, plaintiff filed a written complaint of gender and pregnancy discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Connecticut Commission on Human Rights and Opportunities ("CCHRO").[3] (Defs.' ¶ 36; Pl.'s ¶ 15.)

On November 18, 1999, the CCHRO dismissed the complaint on the basis that there was no reasonable possibility that further investigation would result in a finding of probable cause. (Defs.' ¶ 37.) In December 1999, the CCHRO issued a release of jurisdiction letter; plaintiff requested a Right to Sue letter from the EEOC and, on January 21, 2000, such a letter was issued. (Defs.' ¶¶ 38, 39, 40.) Plaintiff commenced this lawsuit on February 25, 2000. (Defs.' ¶ 41.)

**3.** There is some dispute as to when the CCHRO actually received the complaint but

At her deposition on August 23, 2000, plaintiff alleged that defendant Lacaprucia made certain derogatory statements such as: men were better than women (with reference to playing basketball); women can fish but cannot hunt; telling a trooper that his wife should have her breasts augmented. (Defs.' ¶ 44.) When asked whether she was claiming that Lacaprucia acted against her in a sexist manner or because of her pregnancy, plaintiff replied that she did not know "why he did it." (Defs.' ¶ 45.)

Plaintiff claims that she was denied her contractual right to union representation in the initial phases of the investigation into the Fisher incident. (Pl.'s ¶ 13.) At her deposition, however, she could not recall whether Lacaprucia told her that she was entitled to union representation but she testified that she did seek representation "within a couple of days" of her meeting with Lacaprucia on December 21, 1998. (Defs.' ¶ 47.)

### III. *Discussion*

#### a. *Title VII Claim*

Defendants have moved for summary judgment on all three counts of the Complaint. As to Count I, plaintiff's Title VII claim, the Department of Public Safety asserts that it is entitled to summary judgment as a matter of law because plaintiff cannot carry her prima facie burden of proving that she was discriminated against because of her gender or pregnancy. The Department of Public Safety also asserts that it has provided sufficient admissible evidence that it had legitimate, non-discriminatory reasons for disciplining the plaintiff on two separate occasions.

we find this fact to be irrelevant.

The Second Circuit recently set forth plaintiff's burden at the summary judgment stage of a Title VII case as follows: even if plaintiff succeeds in presenting a prima facie case, defendants may rebut that showing by articulating a legitimate, non-discriminatory reason for the employment action. If defendants are able to articulate such a non-discriminatory reason for the employment action, the presumption of discrimination arising with the establishment of the prima facie case drops from the picture. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). Plaintiff must then produce sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by defendants were false, and that more likely than not discrimination was the real reason for the employment action. *Id.* The question is whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination. To get to the jury, it is not enough to disbelieve the employer; the factfinder must also believe plaintiff's explanation of intentional discrimination. *Id.*

Although we must accept plaintiff's evidence as true for the purposes of the summary judgment motion, inferences drawn in her favor must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990). Moreover, the "mere existence of a scintilla of evidence in support of [ ] plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for [ ] plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Finally, plaintiff cannot simply rest on the allegations in her pleadings since the essence of summary judgment is to go beyond the pleadings to determine whether a genuine issue of material fact exists. *See Celotex Corp.*, 477 U.S. at 324,

106 S.Ct. 2548. While defendants bear the initial burden of establishing that there are no genuine issues of material fact, if they can demonstrate an absence of such issues, a limited burden of production shifts to plaintiff, who must "demonstrate more than some metaphysical doubt as to the material facts, ... [and] must come forward with specific facts showing that there is a genuine issue for trial." *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993) (quotation marks, citations and emphasis omitted). Furthermore, unsupported allegations do not create a material issue of fact. *Weinstock*, 224 F.3d at 41. If the plaintiff fails to meet her burden, summary judgment should be granted.

■ Courts considering Title VII complaints follow the burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff has the initial burden of making out a prima facie case of discrimination. The analysis used in Title VII gender discrimination cases is also applicable in a pregnancy discrimination case. *See Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1313 (11th Cir. 1994). Thus, to establish a prima facie case of discrimination because of pregnancy or gender, plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, (4) under circumstances giving rise to an inference of discrimination. *McDonnell*, 411 U.S. at 802-04, 93 S.Ct. 1817; *Austin v. Ford Models, Inc.*, 149 F.3d 148, 152 (2d Cir.1998).

■ We find that plaintiff has established the first three elements of her prima facie case. Defendants argue that because plaintiff was neither pregnant nor on maternity leave when she was disciplined, Title VII does not protect her. However,

the only case cited by defendants does not stand for the proposition that a plaintiff must be pregnant or on maternity leave when the adverse employment action takes place in order to recover under the PDA. *See Barnes v. Hewlett–Packard Co.*, 846 F.Supp. 442, 444 (D.Md.1994) (noting that Title VII does not prohibit discrimination on the basis of *child-rearing activities* or *parental leave* taken after an employee's return to work from maternity leave). In order to recover under the PDA, an individual need not be on maternity leave when the adverse employment action occurs. *See e.g., Sigmon v. Parker Chapin Flattau & Klimpl,* 901 F.Supp. 667, 677 (S.D.N.Y.1995) (holding that plaintiff easily established that she was a member of a protected class notwithstanding the fact that she was discharged nearly three months after her .return from maternity leave). We find, therefore, that plaintiff was a member of a protected class.

■ Since there has been no suggestion that plaintiff was not qualified for her job as dispatcher, we find that she has established the second element of her prima facie case. Plaintiff has also established the third element by showing that she suffered adverse employment action. In this Circuit, suspension without pay constitutes adverse employment action. *See Lovejoy–Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 223 (2d Cir.2001) (holding that suspension without pay for one week was sufficient to constitute adverse employment action even if the plaintiff was later reimbursed). Adverse employment action has been defined broadly to include " 'discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand.' " *Id.* (quoting *Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir.1999)). Moreover, adverse employment actions are not limited to "pecuniary emoluments." *Preda*

*v. Nissho Iwai Amer. Corp.,* 128 F.3d 789, 791 (2d Cir.1997). Lesser actions may also be considered adverse employment actions, such as " 'negative evaluation letters, express accusations of lying, [and] assignment of [additional duties or less prestigious duties.]' " *Morris,* 196 F.3d at 110. In this case, plaintiff was suspended for two days without pay. Thus, she lost wages. She was also orally counseled for three alleged incidents of unacceptable work behavior and then reprimanded in writing. These would be sufficient to support a jury's finding that she suffered adverse employment action.

■ After reviewing the evidence presented, however, the Court finds that plaintiff has failed to establish the fourth element of her prima facie case. She has not met her *de minimis* burden of showing circumstances that would allow a rational fact finder to infer that defendants had a discriminatory motive in disciplining plaintiff. In fact, plaintiff has produced no evidence whatsoever that she was treated differently than similarly-situated individuals who were not members of a protected class. Instead, she makes broad, self-serving, conclusory allegations, none of which are supported by affidavits or other documentary evidence, that such individuals were treated differently because they were not female or because they had not taken maternity leave. With respect to the Fisher dispute, for example, plaintiff suggests that she was disciplined whereas Fisher was not, because she had taken maternity leave and Fisher had not. To support this conclusion, plaintiff alleges that Lacaprucia found her guilty of acting in a hostile manner toward Fisher despite "clear evidence to the contrary." (Pl.'s ¶ 14.) However, after combing through plaintiff's Memorandum of Law and exhib-

its,[4] including 238 pages of her deposition testimony, we are unable to find even a scintilla of such "clear evidence to the contrary." (Pl.'s ¶ 14, Exs. A–C.) Plaintiff also contends that during the IAI, contrary to standard state police procedure, police officers who were the "best informed witnesses" concerning the incidents were ignored and people with little or no knowledge of the incidents were relied upon for information. (Pl.'s ¶ 12.) However, she provides neither names nor affidavits of those witnesses whom she alleges can support her version of the events. Similarly, plaintiff fails to demonstrate what the correct procedure was or how defendants disregarded such procedure.

After plaintiff filed the CCHRO and EEOC complaints, defendants allegedly retaliated by subjecting her to "close monitoring" and "severe disciplinary sanctions for trivial or nonexistent violations of workplace rules," causing her such "severe emotional distress" that she required medical care and assistance. (Pl.'s ¶ 16.) Again, plaintiff does not provide any further details of defendants' retaliation other than this broad allegation. She also has produced no evidence that similarly-situated employees (others who committed "trivial violations" of workplace rules, for example) who were not members of her protected class (male employees or female employees who had not taken maternity leave) were not disciplined or counseled as she was.

In sum, drawing all inferences in her favor, we hold that plaintiff has failed to set forth sufficient evidence to raise a triable issue of fact as to whether her being disciplined was motivated either by discriminatory intent relating to her gender/pregnancy or in retaliation for her filing complaints with the CCHRO and EEOC.[5] Accordingly, defendants' motion for summary judgment on Count I is granted.

### b. *CFEPA Claim Against Defendant Department of Public Safety*

In Count II, plaintiff alleges violations by the Department of Public Safety of the CFEPA. Plaintiff may only bring a CFEPA claim in federal court against the State if it consents to suit in

---

4. Plaintiff's exhibits consist of the Summons and Complaint, her responses to the Department of Public Safety's interrogatories and document production requests, and her deposition testimony. There are no affidavits to support plaintiff's claims of discrimination or retaliation.

5. In order to sue under Title VII, a party must first file a complaint with the EEOC within 300 days of the alleged unlawful act. *See* 42 U.S.C. § 2000e–5(e)(1) (1994). The Complaint states that plaintiff was "subjected to abuse and retaliation" upon her return to work after her first maternity leave in 1989. (Compl. ¶ 8.) Plaintiff also claims that other incidents of abuse took place in 1990 and in 1994. (Pl.'s ¶ 7; Ex. B.) Since these alleged incidents took place more than 300 days before she filed her EEOC complaint, they are precluded. Under the "continuing violation" exception to the 300–day Title VII limitations period, if a plaintiff brings a claim that is timely as to one incident of an ongoing pattern of discrimination, the claim is valid as to all incidents of discrimination that are a part of that pattern. *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir.1993). We reject plaintiff's contention that the incidents complained of to the EEOC were part of a single, continuing violation that began in 1989 and that persisted up to the date of that filing. Plaintiff has provided no evidence that the present complaint was related to and was a continuing form of the retaliation alleged to have taken place in 1989, 1990 and 1994. Indeed, since we have concluded that plaintiff has not been able to show that the most recent incidents amounted to retaliation, we cannot view the earlier incidents as part of a continuing violation.

that forum. Connecticut law provides that:

> [a]ny person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with section 46a–82 and who has obtained a release from the commission in accordance with section 46a–83a or 46a–101, may also bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the respondent transacts business, except any action involving a state agency or official may be brought in the superior court for the judicial district of Hartford.

Conn. Gen.Stat. § 46a–100 (1999). Connecticut has waived its immunity, but only with respect to cases brought in the Superior Court. The fact that a state has consented to suit in the courts of its own creation does not mean that it consents to suit in federal court. *Smith v. Reeves*, 178 U.S. 436, 441–45, 20 S.Ct. 919, 44 L.Ed. 1140 (1900). Therefore, the Court grants defendants' motion for summary judgment as to the CFEPA claim brought against the Department of Public Safety on the ground that it is barred by Eleventh Amendment immunity. *Walker v. Connecticut*, 106 F.Supp.2d 364, 370 (D.Conn. 2000).

#### c. *CFEPA Claim Against Defendant Lacaprucia*

 In Count II, plaintiff also alleges violations of the CFEPA by defendant Lacaprucia. The Connecticut Supreme Court has not yet addressed the issue of a supervisory employee's liability under CFEPA, and there is a lack of consensus on this issue among the lower Connecticut courts. *See Wasik v. Stevens Lincoln–Mercury, Inc.*, No. 3:98CV1083(DJS), 2000 WL 306048 at *5 (D.Conn. Mar.20, 2000) (collecting cases).

In the absence of controlling precedent, this Court must determine how the Connecticut Supreme Court would decide the issue. *Id.* (citing *Continental Cas. Co. v. Pullman, Comley, Bradley & Reeves*, 929 F.2d 103, 105 (2d Cir.1991)). This Court has previously held that, under certain circumstances, supervisory employees may be liable under CFEPA for discriminatory employment practices. *See Thompson v. Service Merchandise, Inc.*, No. 3:96CV1602(GLG), 1998 WL 559735 (D.Conn.Aug.11, 1998) (adhering to the holding in *Murphy v. Burgess*, No. 3:96CV1987 (AHN), 1997 WL 529610 (D.Conn. Jul.16, 1997)). However, we do not find circumstances appropriate for supervisory liability alleged here. The record shows only that Lacaprucia initiated an IAI against plaintiff in response to a complaint by her co-worker, imposed disciplinary action based upon the IAI, and orally counselled plaintiff after receiving complaints about improper behavior from various other employees. In support of their motion for summary judgment, defendants have produced a number of affidavits, a deposition excerpt as well as copies of the IAI report and supporting documentation, which clearly reflect plaintiff's poor attitude. Plaintiff alleges that Lacaprucia and other supervisors used the Fisher dispute as an excuse to impose unwarranted discipline on her in a series of procedures that violated explicit state police procedures. However, plaintiff's conclusory, unsupported allegations are not sufficient to give rise to an inference of discrimination. Thus, we conclude that plaintiff has failed to meet her burden with respect to her claim of supervisory liability under CFEPA as to defendant Lacaprucia. Accordingly, we grant defendants' motion for summary judgment as to the CFEPA claim brought against La-

caprucia.[6]

#### d. *First and Fourteenth Amendment Claims Against Defendant Lacaprucia*

In Count III, plaintiff alleges that defendant Lacaprucia violated her First and Fourteenth Amendment rights and brings an action against Lacaprucia in his individual capacity[7] pursuant to 42 U.S.C. §§ 1983, 1988. Section 1983 provides, in pertinent part, that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress....

42 U.S.C. § 1983 (1996). In order to state a Section 1983 claim, plaintiff must allege that she was deprived of a right secured by the Constitution or the laws of the United States and that Lacaprucia deprived her of this right under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Plaintiff makes a Fourteenth Amendment equal protection claim and a First Amendment retaliation claim.

▮▮▮▮ In order to state a claim for violation of her Fourteenth Amendment right to equal protection under the law, plaintiff must allege that (1) she, compared with other similarly-situated individuals, was selectively treated, and (2) this selective treatment was based on impermissible considerations such as an intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *Crowley v. Courville,* 76 F.3d 47, 52–53 (2d Cir.1996). Both elements are necessary to state a claim and a "demonstration of different treatment from persons similarly situated, without more, would not establish malice or bad faith." *Id.* at 53.

▮▮▮▮ Plaintiff alleges that Lacaprucia treated her differently than other similarly-situated state police employees in that he failed to follow the procedures that are usually followed in all other in-house disciplinary cases. However, as discussed above, plaintiff has not provided any evidence that Lacaprucia treated her differently than other state police employees who were male or who were female but did not take maternity leave; instead, she merely makes sweeping, conclusory allegations of unequal treatment. Plaintiff re-

6. We also grant summary judgment on plaintiff's claim brought under section 46a–58 of the Connecticut General Statutes on the ground that there is no private cause of action under that statute. *See Garcia v. Saint Mary's Hosp.,* 46 F.Supp.2d 140, 142 (D.Conn.1999) (holding that claims under this section may only be pursued through the CCHRO's administrative procedures).

7. Lacaprucia claims that he is obviously being sued in his official capacity for two reasons: 1) the Complaint is silent on this point, and 2) he was not personally served with a copy of the Summons or Complaint nor was a copy left at his home. The Summons is addressed to Lacaprucia at Troop D, at which he has never worked. (Defs.' ¶ 42.) The Court accepts, however, plaintiff's assertion and supporting documentary evidence that the Summons and Complaint were personally served on Lacaprucia at 1320 Tolland Stage Road, Tolland, Connecticut on March 22, 2000. (Pl.'s ¶ 1, ex. A., Return of Service.) Moreover, plaintiff states quite clearly in her Memorandum of Law that Lacaprucia is being sued only in his individual capacity. (Pl.'s Mem. Law at 6–7.) To the extent that Lacaprucia now alleges that this Court lacks jurisdiction over his person or that service of process was insufficient, such defenses have been waived. *See* Fed.R.Civ.P. 12(b).

fers repeatedly to her "evidence" but has provided no specific, factual allegations to support her conclusory statement that her case was handled differently. (Pl.'s Mem. Law at 8.) Accordingly, defendants' motion for summary judgment on plaintiff's Fourteenth Amendment equal protection claim in Count III is granted.

■ The Complaint alleges that Lacaprucia violated both her right to freedom of speech and to petition for redress of grievances by retaliating against her after she filed written complaints with the EEOC and CCHRO.[8] In order to bring a First Amendment retaliation claim under section 1983, plaintiff must first demonstrate by a preponderance of the evidence that: (1) her speech was constitutionally protected, (2) she suffered an adverse employment decision, and (3) a causal connection exists between her speech and the adverse employment decision against her, in other words, that her speech was a motivating factor in the decision. *Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir.1999). If plaintiff can establish these three factors, Lacaprucia has the opportunity to show by a preponderance of the evidence that he would have taken the same adverse employment action even in the absence of the protected conduct.

■ The question of whether certain speech is protected under the First Amendment is one of law, not fact. *See Connick v. Myers,* 461 U.S. 138, 148 n. 7, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Generally, speech on "any matter of political, social, or other concern to the community" is protected by the First Amendment. *Id.* at 146, 103 S.Ct. 1684. Only if the speech involved addresses a matter of public concern is it necessary for us to balance plaintiff's interests against the state's interest in efficient government. *Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). "When an employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of a personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick,* 461 U.S. at 147, 103 S.Ct. 1684. Courts in the Second Circuit have held that an EEOC complaint based on race and sex discrimination is not necessarily a matter of public concern, and therefore, is not automatically protected speech under the First Amendment. *See, e.g., Ezekwo v. New York City Health & Hospitals Corp.,* 940 F.2d 775, 781 (2d Cir.1991); *but cf. Lehmuller v. Incorporated Village of Sag Harbor,* 982 F.Supp. 132, 137–39 (E.D.N.Y. 1997) (upon reconsideration, the court held that plaintiff's EEOC complaint did involve, at least minimally, a matter of public concern).

■ Assuming arguendo that plaintiff has satisfied the "public concern" requirement, it is doubtful that she has raised a genuine issue regarding causation. The causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment actions, in other words, Lacaprucia would not have taken adverse employment action against plaintiff absent her protected speech. Plaintiff was orally counseled four months after she filed the grievance with her union, and before she filed complaints with the

---

**8.** Since the right to petition the government for redress of grievances is subject to the same constitutional analysis as the right to free speech, we consider both claims together.

*See White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1059 (2d Cir.1993) (discussing *Wayte v. United States,* 470 U.S. 598, 610 n. 11, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985)).

CCHRO and EEOC. Plaintiff alludes to other instances of "close monitoring ... severe disciplinary sanctions" following her complaints to the CCHRO and EEOC but does not provide any specific, factual allegations of such actions, other than to suggest that Lacaprucia turned the oral counseling into a written reprimand soon after she filed the CCHRO and EEOC complaints. We hold that plaintiff has not satisfied the third Morris factor. Accordingly, defendants' motion for summary judgment on plaintiff's First Amendment retaliation claim in Count III is granted.

For all of the foregoing reasons, defendants' motion for summary judgment [Doc. # 23] is GRANTED.

SO ORDERED.